[Civ. No. 14080.   First Dist., Div. One.   Nov. 16, 1949.]

WALTER HELM et al., Respondents, v. PAUL ZACHES et al., Appellants.

Russell Zaches and Orrick, Dahlquist, Neff & Herrington for Appellants.

Campbell & McHarry for Respondents.

WARD, J.—This is an appeal by defendants from an order adjudging and decreeing that defendants hold legal title to certain real property in trust for plaintiffs, who, as the true owners, are entitled to possession. Defendants are ordered and directed to execute and deliver a proper deed of conveyance of the property to plaintiffs upon the payment to defendants by plaintiffs of a specified sum, with interest, and the amount of taxes which had been paid by defendants on the property.

The complaint alleges a copartnership consisting of Paul Zaches and Harry Raine, and it is admitted they were doing business as Herald Printers and Publishers. It is also alleged that Clara D. Helm entered into an agreement with Harry Raine to make a loan to plaintiffs of funds necessary for the purchase of certain real property; that legal title to the property in accordance with the agreement was taken by the Her-

ald company as security for the loan; and that Raine agreed to advance $1,800 as a down payment, and to borrow the balance of $2,700 from the Carmel Branch of the Monterey County Trust and Savings Bank, upon a promissory note secured by a deed of trust upon the property and providing for monthly payments upon principal and interest. The complaint further alleges "That the aforesaid agreement and the loan thereafter were made by defendant Harry Raine as a partner acting for and on behalf of the Herald Printers and were made subject to the approval thereof by defendant Paul Zaches, the other of said partners." The court, by reference to the allegations of the complaint, found that the agreement was made subject to the approval of Zaches.

The preliminary facts are substantially as follows: Clara Helm with her two children desired to live on the Monterey peninsula while her husband was with the armed forces overseas. She and her sister, defendant Mary Raine, with whom she was then living, were looking for a house to rent, but could find no suitable place where children were welcome so they started looking for something to buy. Mrs Helm did not have money for a down payment. When the house here involved was discovered her brother-in-law, Harry Raine, was asked to look at the property. He then told her that he would advance the money for the down payment of $1,800, borrowing from the bank on the credit of his business partnership, and it was understood that he would personally obtain a loan for the balance of the purchase price. There were two houses for sale by the same owner and the particular house decided upon was selected because it had a private bedroom and bath in the back which could be rented to repay the down payment loan. Mrs. Helm was to make the payments to the bank, and agreed to repay to her brother-in-law the amount of the down payment. She was told by Raine that she would have a "buyer's lease." At that time Raine was carrying on the business of the Herald Printers and Publishers while his partner, Zaches, was in the Army in the eastern part of the United States. In the beginning when the aforementioned discussion was had about buying the house, Raine had said that *his partner Zaches "might not go for" the loan of the down payment.* (Italics added.) Thereafter Raine went ahead and made the down payment of $1,800 and attended to all the financial arrangements. Raine never consulted Zaches until the purchase "was final and all over and done with." He did, however, tell Zaches about the transaction sometime

during the same year that it was made. The evidence discloses that Mrs.. Helm moved into possession of the property about September 1, 1943, and has lived there ever since; also that she made payments to the bank on the unpaid balance of the original purchase price and paid fire insurance premiums.

The evidence further shows the purchase of the home for $4,500. To finance the purchase Raine borrowed approximately $1,300 from the Monterey County Trust & Savings Bank on the credit of his partnership with defendant Zaches and added to this amount sufficient to make the down payment in an amount of $1,800. The balance of $2,700 was borrowed from the bank by Raine *personally* upon a note executed by him and his wife, secured by a deed of trust covering the property. The purchase was consummated on August 20, 1943, and subsequently Mrs. Helm moved into the house. Thereafter Raine and his wife conveyed a one-half undivided interest in the property to Zaches and his wife, which is referred to in the evidence as an accommodation transaction.

The main issue is whether sufficient evidence was presented to establish facts necessary to declare that a resulting trust arose. ''When a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made.'' (Civ. Code, § 853.) Proof of such a trust may be based upon a verbal agreement. (25 Cal. Jur., Trusts, § 53, p. 185.) When it is necessary to show that a resulting trust exists the proof must be unambiguous and convincing. (*Gomez* v. *Cecena,* 15 Cal.2d 363 [101 P.2d 477]; *Baskett* v. *Crook,* 86 Cal.App.2d 355 [195 P.2d 39].) The proof, however, may be by indirect evidence consisting of acts, conduct and the surrounding circumstances. '' [T]he question whether the showing is clear and convincing is primarily one for the trial court.'' (*Hansen* v. *Bear Film Co. Inc.,* 28 Cal.2d 154, at p. 173 [168 P.2d 946]; *Beeler* v. *American Trust Co.,* 24 Cal.2d 1 [147 P.2d 583].) The finding in favor of a trust in the present case is amply supported.

Mrs. Helm testified that Harry Raine agreed to lend her the money to purchase the property and that the word ''rent'' was never mentioned. However, she testified that Raine said Paul Zaches ''might not go for'' the loan of the down payment, and that she agreed to repay the amount advanced by Raine as the down payment and to pay the bank installments. Raine testified that he had told plaintiff the partnership would lend her the amount necessary to purchase

the property conditional upon his partner's consent. The evidence discloses that this discussion took place before the delivery of the deed to Raine. There is no evidence that Raine communicated with Zaches before the purchase of the property was completed, to determine whether Zaches approved or disapproved the transaction. Furthermore, there is no evidence that if Zaches did not approve the loan Raine and Zaches would in fact hold the property as owners and that the Helms would assume the position of renters. The evidence presented justifies a conclusion that defendants held the property in trust for plaintiffs.

The finding by reference to the allegations of the complaint that the loan was made by Harry Raine subject to the approval of his partner, Paul Zaches, is of no consequence, in view of the lack of evidence on the matter of Zaches' approval prior to the time that Raine purchased the property subject to the equitable obligation to retain the property for the Helms. Such approval was not made a part of the agreement. A resulting trust arose when Raine and his wife had the property transferred to them without intent to take the complete beneficial interest. The finding that the loan was made pursuant to the approval of Zaches is incidental to the judgment. It was merely a declaration of an issue raised by the pleadings. Furthermore, this court could make a finding contrary to or in addition to the trial court's finding in that respect if it were deemed necessary. (Code Civ. Proc., § 956a; Cal.Const., art. VI, § 4¾.) Findings have been held incidental to the judgment. (*Millard* v. *Legion of Honor,* 81 Cal. 340 [22 P. 864]. The judgment herein indicates that all of the vital issues have been set at rest.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 12, 1950. Schauer, J., voted for a hearing.